UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| STACY METTLER HARMS, | ) | Civ.  05-5059-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | MOTION TO DISMISS |
| CIGNA INSURANCE COMPANIES, | ) | |
| a/k/a Ace American Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |

Stacy Mettler Harms filed a complaint against Cigna Insurance
Companies (Cigna) asserting claims for bad faith and deceptive trade practices
and seeking compensatory and punitive damages.  Cigna moves to dismiss
contending that Harms's failure to list the bad faith cause of action as an
asset in her bankruptcy proceeding bars her from asserting the claim now.
Alternatively, Cigna contends that the bad faith and deceptive trade practices
claims are time barred.  Harms opposes the motion.  The motion to dismiss is
denied.

**BACKGROUND**

On December 15, 1993, Harms arrived for work at SIBCO, Inc.  Upon
arrival at work, she slipped in the parking lot on icy conditions and fell.
Harms was injured in the fall, and she was eventually diagnosed with

sacroiliac joint dysfunction.  In both August of 1994 and August of 1995, Harms underwent surgery to attempt to repair her condition.

As a South Dakota corporation, SIBCO was statutorily obligated to provide worker's compensation insurance to its employees.  SIBCO contracted with Cigna to provide worker's compensation insurance.   Harms was eligible for worker's compensation insurance coverage for her medical bills and other expenses caused by the fall because she was injured at work.

Harms alleges that Cigna initially refused to provide coverage for her medical expenses.   As a result, in May of 1994, Harms filed a petition with the Department of Labor seeking worker's compensation insurance benefits. Approximately six months later, Cigna accepted the work-related fall as covered.  Nevertheless, Cigna continued to contest its obligation to pay some of the medical expenses.

On June 1, 1995, Harms filed a voluntary Chapter 7 bankruptcy petition.  In her schedule of assets, she listed her pending worker's compensation claim against Cigna.  Harms received a Chapter 7 discharge in bankruptcy on September 6, 1995.

Cigna appealed adverse rulings regarding its obligation to provide worker's compensation benefits to circuit court and to the South Dakota Supreme Court.  On May 23, 2001, the South Dakota Supreme Court ruled in Harms's favor on all issues.  Mettler v. Sibco, Inc., 628 N.W.2d 722 (S.D.

2001).  Harms alleges that Cigna continued to refuse to pay many of the
covered, outstanding medical bills until November of 2002.  Harms further
alleges that in September and October of 2005, Cigna continued to unlawfully
deny her coverage for prescriptions.

On July 29, 2005, Harms filed a complaint against Cigna alleging
claims for bad faith and deceptive trade practices[1] for Cigna's denial of
worker's compensation insurance benefits.  Harms was unable to effectuate
service of this first complaint.  On August 26, 2005, Harms filed an amended
complaint against Cigna, which asserted the same claims.  Cigna responded
to this second complaint by moving to dismiss under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Cigna moves to dismiss Harms's complaint for failure to state a claim
under Fed. R. Civ. P. 12(b)(6).  In considering this motion, the court
considered matters outside the pleadings, namely opinions and pleadings in
the underlying worker's compensation claim.  "The district court may take
judicial notice of public records and may thus consider them on a motion to
dismiss."  Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 699 (8th Cir. 2003);
Faibisch v. Univ. of Minn., 304 F.3d 797, 802- 03 (8th Cir. 2002).  Although
referenced by the parties, the court did not consider any other matters

---

[1] In response to Cigna's motion to dismiss, Harms withdrew her claim for
deceptive trade practices.  Accordingly, the only claim remaining is the claim
for bad faith.

submitted that were outside the pleadings.  "The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."  Stahl, 327 F.3d at 699; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 491 (2d ed. 1990); Casazza v. Kiser, 313 F.3d 414, 417-18 (8th Cir. 2002).

When considering a motion to dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff.  Federer v. Gephardt, 363 F.3d 754, 757 (8th Cir. 2004).  The court may dismiss the complaint if no review could be granted under the allegations even if all facts alleged were proven true.  Id.

## DISCUSSION

Cigna contends that it is entitled to judgment as a matter of law for two reasons: (I) Harms failed to list the bad faith claim as an asset on her bankruptcy schedules, and (II) the bad faith claim is time barred.

## I.      Failure to List the Bad Faith Claim As an Asset on Bankruptcy Schedules

On June 1, 1995, Harms filed a Chapter 7 bankruptcy petition.  (Docket 9-12, at 9). The bankruptcy court entered a Chapter 7 discharge on September 6, 1995.  (Docket 9-12, at 1).  In her bankruptcy schedules, Harms listed her pending worker's compensation claim against Cigna.  (Docket 9-12,

at 32).  Harms did not, however, list a cause of action for bad faith against
Cigna.

### A.    Judicial Estoppel

Cigna contends that Harms is judicially estopped from asserting her
bad faith claim because she failed to list the claim as an asset in her
bankruptcy schedules.  Harms responds by stating that she did not have to
list the claim as an asset because it did not accrue until after her discharge
from bankruptcy court.

Judicial estoppel bars a litigant from asserting a position in one
proceeding and later asserting an inconsistent position in another proceeding.
See Watertown Concrete Prods., Inc. v. Foster ex rel. Estate of Foster, 630
N.W.2d 108, 112 (S.D. 2001).[2]  Courts invoke judicial estoppel to prevent
litigants from "'playing fast and loose with the courts.'"  State v. St. Cloud,
465 N.W.2d 177, 179 (S.D. 1991) (quoting Behrens v. Baldenecker, 77 N.W.2d
917, 919 (S.D. 1956)).

Failure to list an accrued cause of action as an asset during bankruptcy
proceedings can trigger judicial estoppel implications.  Upon filing of a
bankruptcy petition, all assets of the debtor, including potential causes of

---

[2] South Dakota law determines whether judicial estoppel applies in this
diversity case.  Monterey Dev. Corp. v. Lawyer's Title Ins. Corp., 4 F.3d 605,
608-09 (8th Cir. 1993) (applying Missouri law on judicial estoppel in a diversity
case).

action, become an asset of the bankruptcy estate.  <u>See</u> 11 U.S.C. § 541(a); <u>United States ex rel. Gebert v. Transp. Admin. Servs.</u>, 260 F.3d 909, 913 (8th Cir. 2001) ("[T]he property of the estate includes all causes of action that the debtor could have brought at the time of the bankruptcy petition.").  Debtors have an affirmative obligation to disclose all of their assets to the bankruptcy court.  <u>See</u> 11 U.S.C. § 521(a)(1)(B).  Failure to disclose acts as an affirmative statement that no cause of action exists, a position inconsistent with a later attempt to enforce the cause of action in a separate proceeding.  <u>See</u> <u>Harvey v. S. Minn. Beet Sugar Coop.</u>, No. Civ. 02-4934 (PAM/RLE), 2004 WL 368471, at *3 (D. Minn. Feb. 26, 2004).  Judicial estoppel bars debtors who fail to disclose an accrued claim as an asset in their bankruptcy proceedings from prosecuting the claim after discharge from bankruptcy.  <u>See</u> <u>Foster v. Foster</u>, 673 N.W.2d 667, 672 (S.D. 2003); <u>see also</u> <u>Harvey</u>, 2004 WL 368471, at *3.

In a Chapter 7 bankruptcy proceeding, only causes of action that have accrued before filing of the bankruptcy petition are assets of the bankruptcy estate.  <u>Brassfield v. Jack McLendon Furniture, Inc.</u>, 953 F. Supp. 1424, 1432 (M.D. Ala. 1996).  Any cause of action that accrues after the filing of the bankruptcy petition is property of the debtor.  <u>Id.</u>  Accordingly, the debtor is not required to disclose causes of action that accrue after filing of the petition, and failure to disclose does not estop the debtor from prosecuting the claim at a later date.  <u>See</u> <u>id</u>; <u>see also</u> <u>Foster</u>, 673 N.W.2d at 672-73.

6

In Foster, the plaintiff asserted two breach of contract claims against his brother.  The brother moved for summary judgment contending that the plaintiff's failure to list the claims as assets in his bankruptcy proceedings barred the claims.  The South Dakota Supreme Court noted the temporal distinction between the two claims.  The first claim accrued before the plaintiff filed his bankruptcy petition, and thus, was barred by, among other things, judicial estoppel.  The court held, however, that the plaintiff could assert the second claim.  The court noted that the plaintiff entered into the second contract with his brother after the plaintiff converted his Chapter 12 bankruptcy to a Chapter 7 bankruptcy.[3]  Because there was no contract before the conversion, no claim for breach of that contract could have accrued.  Accordingly, the court found that any claim for breach of the second contract was post-conversion and property of the plaintiff.

Like the second contract in Foster, Harms's bad faith claim accrued after she filed her Chapter 7 bankruptcy petition on June 1, 1995.  In its reply memorandum, Cigna acknowledges that a claim accrues before filing of a bankruptcy petition if "all of the elements of the cause of action had occurred

---

[3] The bankruptcy estate includes all property, including accrued causes of action, that debtor owned when the debtor converted the bankruptcy from Chapter 12 to Chapter 7.  See 8 Collier on Bankruptcy ¶ 1207.01 (Alan N. Resnick et al. eds., 15th ed. 2005).  The debtor owns all property acquired after the conversion.  See id.  In this regard, the conversion in Foster has the same effect as the filing of the Chapter 7 petition in this case.

as of the time that the bankruptcy case was commenced . . . ."  Wooten v.
Altamaha Bank & Trust, No. Civ.A. CV203-100, 2005 WL 2459095, at *2 (S.D.
Ga. Oct. 4, 2005).  In a bad faith claim for failure to provide worker's
compensation insurance benefits, one of the elements of the bad faith claim is
a final judgment in South Dakota worker's compensation proceedings in favor
of the claimant.   See Zuke v. Presentation Sisters, Inc., 589 N.W.2d 925, 930
(S.D. 1999).  Thus, the claim accrues upon entry of "final judgment from the
department of labor," including all appeals, in the worker's compensation
proceedings.  See Brennan v. W. Nat'l Mut. Ins. Co., 125 F. Supp. 2d 1152,
1155 (D.S.D. 2001).

       In this case, Harms's worker's compensation claim accrued on May 23,
2001, when the South Dakota Supreme Court issued its ruling on the appeal
of Harms's worker's compensation proceedings.  Mettler, 628 N.W.2d at 722.
Harms could not have brought her bad faith claim before this date.  Zuke, 589
N.W.2d at 930 ("[O]nly after a worker's compensation claimant has exhausted
her remedies under the South Dakota Worker's Compensation statutes may a
trial court hear her bad faith claim for denial of worker's compensation
benefits.").  The unaccrued bad faith claim was not property of the bankruptcy
estate when Harms filed her bankruptcy petition on June 1, 1995.  See United
States ex rel. Gebert, 260 F.3d at 913.  As such, Harms had no obligation to
list the bad faith claim as an asset in her schedules, and her failure to do so

does not judicially estop her from asserting her bad faith claim in this proceeding.  See Foster, 673 N.W.2d at 673.

Cigna contends that the bad faith claim accrued prior to Harms's filing of her bankruptcy petition because Cigna denied coverage of Harms's claims before the bankruptcy filing.  Based thereon, Cigna argues that Harms knew all the facts required to support her bad faith claim by June 1, 1995, when she filed her bankruptcy petition.  This argument, however, overlooks the fact that Harms could only assert a bad faith claim after exhausting her remedies under the worker's compensation laws.  Zuke, 589 N.W.2d at 930.  Until the worker's compensation proceedings were complete, Harms did not know one crucial fact—whether the worker's compensation proceedings would find that she was entitled to worker's compensation benefits.

Moreover, the particular circumstances of this case do not warrant invocation of judicial estoppel.  Harms did disclose her pending worker's compensation claim.  (Docket 9-13, at 32).  Furthermore, her bad faith claim was filed nearly ten years after both her filing and discharge from bankruptcy court.  Simply put, the court finds no legitimate contention that Harms attempted to "play fast and loose" with the judicial proceedings.  See St. Cloud, 465 N.W.2d at 179.  Accordingly, judicial estoppel does not bar Harms's bad faith claim.

9

**B.    Standing**

Cigna also argues that Harms lacks standing to assert the bad faith claim.  Cigna contends that only the bankruptcy trustee has standing to assert the claim because the claim was undisclosed property of the bankruptcy estate.  See Erickson v. Baxter Healthcare, Inc., 94 F. Supp. 2d 907, 912 (N.D. Ill. 2000).

This argument presupposes, however, that the bad faith claim was property of the bankruptcy estate.  See United States ex rel. Gebert, 260 F.3d at 913-14.  As noted above, only claims that accrued prior to Harms's filing of her Chapter 7 petition became property of the bankruptcy estate.  Further, as discussed above, the bad faith claim did not accrue until nearly seven years after Harms filed her bankruptcy petition.  Accordingly, the bad faith claim was never property of the bankruptcy estate, and Harms has standing to assert the claim.  See Erickson, 94 F. Supp. 2d at 913.

**II.    Statute of Limitations**

Cigna contends that Harms's bad faith claim is barred by the statute of limitations.  Harms disputes this contention, arguing that either a longer limitations period applies to the bad faith claim or that running of the limitations period was suspended by the continuing tort doctrine.

The South Dakota Supreme Court has not decided the applicable limitations period for bad faith claims.  Accordingly, this court must predict which limitations period the South Dakota Supreme Court would adopt.[4]  See Lindsay Mfg. Co. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1270 (8th Cir. 1997).  Cigna argues that a three-year limitations period applies.  Harms argues for application of either a six-year or a ten-year limitations period.

The court determines the appropriate limitations period by focusing on "the nature of the cause of action or the right sued upon (and not the form of the action) . . . ."  Morgan v. Baldwin, 450 N.W.2d 783, 785 (S.D. 1990).  In South Dakota, a bad faith claim "is an intentional tort."  Isaac v. State Farm Mut. Auto. Ins. Co., 522 N.W.2d 752, 760 (S.D. 1994).  The contractual relationship between the insurer and the insured creates the insurer's duty of good faith and fair dealing.  See In re Certification of a Question of Law from the U.S. Dist. Ct., Dist of S.D., W. Div., 399 N.W.2d 320, 322 (1987).  The intentional, tortious breach of this duty creates a bad faith claim.  See id. ("[T]he better rule is that a insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract.").  Still, the tort of bad faith is inextricably intertwined with the underlying contractual relationship.  Cf. Stanton v. State Farm Fire & Cas. Co., 169 F. Supp. 2d

---

[4] South Dakota law determines the appropriate limitations period in this diversity case.  See In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004).

1109, 1115 (D.S.D. 2001) (dismissing a bad faith claim because claimant failed to satisfy a condition precedent to the insured's duty to provide coverage).

Cigna argues that Harms's bad faith claim is subject to the three-year limitations period for "an action for personal injury" in SDCL 15-2-14(3). The South Dakota Supreme Court has interpreted "personal injury" broadly "to include injuries to personal rights." Titze v. Miller, 337 N.W.2d 176, 177 (S.D. 1983). Based thereon, the court in Titze applied § 15-2-14(3) to a spouse's loss of consortium claim. Additionally, § 15-2-14(3) has been applied to claims asserting: negligence, Hedel-Ostrowski v. City of Spearfish, 679 N.W.2d 491, 494 (S.D. 2004); strict liability causing bodily injury, Carr v. Core Indus., 392 N.W.2d 829, 830 (S.D. 1986); harm caused by sexual abuse, see Stratmeyer v. Stratmeyer, 567 N.W.2d 220, 224 (S.D. 1997); invasion of privacy, Roth v. Farner-Bocken Co., 667 N.W.2d 651, 659 (S.D. 2003); and intentional infliction of emotional distress, Shippen v. Parrott, 506 N.W.2d 82, 86 (S.D. 1993).

Cigna argues that § 15-2-14(3) applies to all tort claims. The South Dakota Supreme Court has explicitly rejected this position, however. See Corner Constr. Co. v. U.S. Fid. & Guar. Co., 638 N.W.2d 887, 896 (S.D. 2002). In Corner Constr. Co., the defendant argued that § 15-2-14(3) applied to all tort actions, including plaintiff's action for negligent misrepresentation. The

12

court disagreed, stating "[t]his is clearly not an action for personal injury." Id. The court applied § 15-2-13(1)'s six-year limitation period for an "action based upon a contract, obligation, liability."

Section 15-2-14(3) does not apply to Harms's claim because bad faith claims are not actions based on injuries to personal rights. See Richardson v. Allstate Ins. Co, 172 Cal. Rptr. 423, 426 (Cal. Ct. App. 1981). In Richardson, the defendant argued that plaintiff's bad faith claim was time barred under California's one-year statute of limitations applicable to infringement of personal rights. The court disagreed, stating "[b]reach of the implied covenant of good faith is actionable because such conduct causes financial loss to the insured, and it is the financial loss or risk of financial loss which defines the cause of action." Id. The court held that bad faith claims vindicate property rights, even if the plaintiff asserts recovery for mental distress as "an aggravation of the financial damages." Id. In Gourley v. State Farm Mut. Auto. Ins. Co., 3 Cal. Rptr. 2d 666, 671 (Cal. 1991), the California Supreme Court "agree[d] with Richardon's discussion of the nature of a bad faith action as an action for the interference with a property right," not a personal right.

The court predicts that the South Dakota Supreme Court would follow Richardson and Gourley and find that bad faith claims are based upon deprivation of property rights, not personal rights. In addition to Richardson, the Gourley court also relied on Crisci v. Sec. Ins. Co. of New Haven, Conn.,

13

58 Cal. Rptr. 13 (Cal. 1967).  In Crisci, the court stated that a third-party bad faith claim was a claim for "an interference with property rights without any personal injuries apart from the mental distress."  Id. at 19.  Nevertheless, the court held that "a plaintiff who as a result of defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress."  Id.  Accordingly, Crisci limited when mental distress damages were available in a bad faith claim.

In Kunkel v. United Sec. Ins. Co. of N.J., 168 N.W.2d 723 (S.D. 1969), the South Dakota Supreme Court explicitly followed Crisci in limiting the recovery of mental distress damages in the third-party bad faith context.[5]  In Kunkel, the plaintiff sought recovery of damages for plaintiff's mental distress. Relying on Crisci, the South Dakota Supreme Court denied recovery of mental distress damages because "there [was] no evidence of what we consider invasion of a property right similar to what occurred in Crisci . . . .  There is no evidence that Kunkel suffered any financial distress, lost either property or employment, or otherwise sustained pecuniary loss" from the alleged bad

_____

[5] The court acknowledges that this case presents a first-party bad faith claim (insurers failure to pay the insured benefits) and that Kunkel involved a third-party bad faith claim (failure to settle liability to third-party within policy limits); however, the court finds no reasoned distinction between the rights vindicated by the two different causes of action.  See Gourley, 3 Cal. Rptr. 2d at 670-71; cf. Certification of Question of Law from U.S. Dist. Ct., W. Div., 399 N.W.2d at 322 (citing Kunkel as authority to adopt first-party bad faith claim). In both instances, the insurer's bad faith actions subject the insured to financial loss.

14

faith.  Id.  Thus, the South Dakota Supreme Court implicitly recognized that bad faith claims vindicate property rights.  Based on the South Dakota Supreme Court's previous reliance on Crisci, the court predicts that the South Dakota Supreme Court would follow Richardson and Gourley and hold that bad faith claims vindicate the infringement of property rights, not personal rights.  Accordingly, § 15-2-14(3), which covers claims vindicating personal rights, does not apply to Harms's bad faith claim.

Harms argues that § 15-2-13(1) applies to her action.  Section 15-2-13(1) provides a six-year limitation period for "[a]n action upon a contract, obligation, or liability, express or implied . . . ."  Harms's argument is supported by Corner Construction Co., 638 N.W.2d at 895-96.  In Corner Construction Co., a contractor asserted a negligent misrepresentation claim against his insurance agent for allegedly misrepresenting whether the contractor's general liability insurance provided coverage for negligent acts of subcontractors.  Because of the alleged misrepresentation, the contractor apparently failed to provide the insurer written notice of the claim, potentially barring coverage for the claim.  Id. at 895.  Presumably, the damages asserted in the negligent misrepresentation claim would have included the loss of coverage for an otherwise covered event.  In short, the plaintiff was asserting a claim for a tortious act that prevented the plaintiff from receiving insurance coverage.  The court applied the six-year limitations period in § 15-2-13(1)

15

because "[t]he underlying claim appears to be based upon a contract, obligation, or liability . . . ." Id. at 896.

The court finds that Corner Construction Co. supports application of § 15-2-13(1) to Harms's bad faith claim because the underlying property rights vindicated in that case and this case are nearly identical.  In both instances, the defendant's tortious acts allegedly deprived the plaintiff of insurance coverage.  Based on all of the foregoing, the court predicts that the South Dakota Supreme Court would apply the six-year limitations period in § 15-2-13(1) to Harms's bad faith claim, rather than the three-year limitations period contained in § 15-2-14(3).[6]

Policy considerations dictating the construction of limitations periods in South Dakota supports the court's conclusion.  "As a matter of policy, where there is substantial question as to which of two or more statutes of limitation within the jurisdiction should be applied, the statute containing the longest limitation should be applied."  Morgan, 450 N.W.2d at 785.  This policy serves "'the legislative intent of protecting defendants from stale claims, yet provides an approach of liberality which affords a plaintiff party-litigant maximum free access to our court system.'"  Id. at 786 (quoting Williams v. Lee Way Motor Freight, Inc., 688 P.2d 1294 (Okla. 1984)).  The thorough research and adept

---

[6] The ten-year catch-all limitations period in § 15-2-8(4) may apply rather than the six-year period contained in § 15-2-13(1).  The court refrains from deciding this issue because Harms's claim is timely under either section.

16

arguments by both parties make one thing clear, that the matter of which limitations period applies to bad faith claims is unclear.  As such, the court finds that a "substantial question" exists whether SDCL 15-2-14(3) or 15-2-13(1) applies.  Accordingly, the court applies the longer limitations period—the six-year period contained in SDCL 15-2-13(1).

Next, the court must determine whether Harms's claim is timely under the six-year limitations period.  As noted above, the action accrued on May 23, 2001, when the South Dakota Supreme Court issued its decision on the appeal of Harms's worker's compensation proceedings.  <u>See</u> <u>Brennan</u>, 125 F. Supp. 2d at 1156.  Based on the six-year limitation period, Harms had until May 23, 2007, to file her claim for bad faith.  The pending claim was filed, at the latest, on August 26, 2005.[7]  Accordingly, the court finds that the bad faith claim was timely filed, and that Cigna's statute of limitations argument lacks merit.

Alternatively, Harms argues that even if the three-year statute of limitations applies, her action is still timely under the continuing tort doctrine.  Because the court found that Harms's claim was timely, it does not need to reach this issue.

---

[7] The amended complaint was filed on August 26, 2005.  The initial complaint was filed on July 29, 2005.  The summons for the initial complaint was not served, however.  The court refrains from considering whether the amended complaint relates back to the initial complaint, because the claim in the amended complaint is timely.

Accordingly, it is hereby

ORDERED that Cigna's motion to dismiss (Docket 7) is denied.

IT IS FURTHER ORDERED that Cigna shall file an answer to Harms's

amended complaint on or before **March 27, 2006**.

Dated March 13, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE